The opinion of the Court was delivered by
Wardlaw, J.
A few prominent facts, gathered from the report and admissions made at the bar, will present the case which is to be decided.
The swamp upon which the plantations of plaintiff and defendant are situated, had, by nature, no drainage sufficient for cultivation. Its surplus waters were slowly discharged toward the north-west, by sluggish currents on either side of Mickie isl- and, into Deer creek, and thence into Ashepoo river. The general surface was so nearly level, that canals and ditches, dug below the surface so as to collect and carry off the waters, might, without much difficulty, be so graded as to run in any desired course, if a sufficient outlet for them into the creek or river could be had.
In 1767, the date of the oldest plat that was produced on the trial, the three plantations, (viz. the Bluff, and Middle Place, now belonging to the plaintiff, and Smilie, now belonging to the defendant,) belonged to one person, and were all, in part or in whole, cleared, ditched, banked, and cultivated in rice. The waters of the Bluff, (which, of the three, was southernmost and highest up the swamp,) were by Boone’s causeway, (which is situated on the line across the swamp between the Bluff and Middle Place,) obstructed in their natural flow over Middle Place and turned into Boone’s canal, which ran near the western edge of the swamp, through Middle Place and west of Mickie island to Deer creek. The waters of Middle Place were dammed back from Smilie by Clark’s dam, (which extended from Mickie island on the west across the western branch of the swamp to the high land on the *414 east,) and were turned by ditches or a canal into Boone’s canal. The natural flow of the waters north of Clark’s dam, (round the east and-north of Mickie island to Deer creek,) was obstructed by Toomer’s bank, which had been raised on the adjoining land of Fishburne or Ladson, and an artificial channel cut partly through land higher than any of the swamp, afforded a vent for these waters into Ashepoo, in a north-eastern direction, so that they were discharged far below the mouth of Deer creek. Clark’s dam was a short distance south of the line that divided the Smi-lie tract and the Middle Place tract: and some acres of swamp, rvhich originally belonged to the latter tract, (spoken of as seven or fifteen acres,) were by the dam separated from Middle Place and connected with Smilie : and these few acres, as well as all of Smilie, depended for drainage upon the artificial channel which ran near the eastern edge of the swamp up to Clark’s dam, but not through it.
In this condition the three plantations seem to have been cultivated by successive owners of the whole, from 1767 until a period shortly before 1832.
In 1830, the cultivation of some of the lands was neglected : an accidental break in Clark’s dam, which had taken place after 1826, was left unrepaired, and the waters from Middle Place flowed into Smilie. In 1832, the Smilie tract, according to its original lines, was sold to George P. Elliott, by persons who retained the other two tracts, until they sold them to the plaintiff in 1847 and 1849. The same year George P. Elliott purchased, he made a dam to obstruct the flow of the waters, which came through the break in Clark’s dam: and. he continued to make improvements and obstructions, until in 1835 he had made three dams across the swamp on his own land, and had repaired Clark’s dam on the land above, and had filled up the artificial channel between his line and Clark’s dam. In 1849, the defendant was the owner of Smilie by purchase from George P. Elliott’s vendee, and was continuing the obstructions on his own land, and using the artificial channeljbefore mentioned, which is now called the Smilie canal: the plaintiff, insisting upon his *415 right to discharge the waters of Middle Place through Clark’s dam into the Smilie caiial, or upon the Smilie tract, procured the defendant’s bank to be cut by a magistrate and freeholders, and brought this action to recover damages for the obstruction.
If no break had ever occurred in Clark’s dam, there would have been no circumstance which could have suggested a different rule, for the rights of the parties, from the disposition or arrangements which had been made for the use of the plantations by the proprietors, who owned them all. Apart from all consider ration of time, there is implied, upon the severance of a heritage, a grant of all those continuous and apparent easements which have in fact been used by the owner during the unity, though they have had no legal existence as easements, as well as of all those necessary easements without which the enjoyment of the several portions could not be fully had. (a)
To no subject is this doctrine more applicable than to the rice plantations on our inland swamps, in which the natural flow of water must be aided and controlled by artificial contrivances, and these may be infinitely diversified according to the judgment and ability of the owner. Those benefits or inconveniences, which, according to the scheme of culture that was adopted by the owner of a whole body of land, were enjoyed or suffered by a parcel thereof that he has sold, provided they are of uninter-mitting character and are shewn by external works, pass with, the parcel as necessary incidents of the land. They are like the natural easements of running water and supporting soil. Indeed, on a rice plantation, the ditches and banks are real substitutes for the insufficient arrangements of nature, the marks of which are often entirely obliterated.
If Clark’s dam had been in repair when George P. Elliott bought Smilie, there could then be no doubt that he and those who derive title from him might not only, by banks and dams, resist the discharge upon Smilie of the watersfrom Middle Place, which had been long dammed back by Clark’s dam and turned into another channel, but might insist that Clark’s dam should be *416 in all respects regarded as a natural bank, which the owner of Middle Place could not rightfully cut or alter to their damage.
But Clark’s dam was broken when George P. Elliott purchased — the water might then be seen to descend through it from Middle Place to Smilie according to the law of nature ; and was not Smilie, when bought, subject to the natural easement which this law imposed ? This depends upon the manifestations of the will of the owner of the two tenements. The arrangements which he had made, he could change at pleasure: and if he had, before the sale of Smilie, shown that his scheme was changed, and that he no longer intended Clark’s dam to remain as an obstruction to the natural flow of the waters, then his last disposition furnished the rule, according to which the purchaser should take Smilie, burdened, or benefitted, by the qualities which were attached to it. But a change, which is to impress lasting qualities on an estate, must be permanent and not temporary. There must be an abandonment of the old scheme, and either the adoption of a new one or an acquiescence in the natural order of things that may follow the abandonment (b). Upon this point, the verdict of the jury, under the instructions which were given, shows conclusively, that there was no abandonment of the scheme of culture, which had been long persisted in, but only an accidental and temporary derangement of it, no more indicating a change of purpose, than any decay of materials or occasional disuse of an improvement would do. To this conclusion the conduct of George P. Elliott, in repairing Clark’s dam, the acquiescence of those under whom the plaintiff claims from 1835 till 1849, in obstructions of the right now urged to discharge through Clark’s dam, and the evidence of the insufficiency of the Smilie canal, even in its present improved condition, to discharge more than the waters of Smilie, all plainly conduce: and besides the mere fact, that there was a break in Clark’s dam when George P. Elliott purchased, we see nothing in the evidence to favor the view of the plaintiff.
What we have said decides the case which the plaintiff pre- *417 sen ted on the Circuit, where, throughout the trial, he urged his right to drain Middle Place, through Clark’s dam, into and upon Smilie. He now, under his fifth ground of appeal, presents a new case to this Court, claiming a narrower right, if the other should be denied to him. It is this. He has, as before mentioned, a few acres below Clark’s dam, between it and the Smilie boundary line. These, by the scheme of culture adopted by the owners of the two tenements, were cpnnected with Smilie, and, like it, drained through the artificial channel now called the Smilie canal: the defendant has continued obstructions which George P. Elliott,between 1832 and 1835,made to this drainage; and for this, it is said, the plaintiff should recover, even if he has nota right to drain through Clark’s dam. „
The first count of the declaration complains of defendant’s having obstructed the natural course of the waters from plaintiff’s low ground through defendant’s land to tide water: under this the plaintiff’s new case could not be made, for the natural course had been obstructed and was superseded by an artificial channel, at the time the heritage was severed, long before and ever since.
The third count is also inapplicable : for it complains of the defendant’s neglecting to repair the artificial channel, as he was bound to do, and there is no evidence that the defendant was bound to repair the channel upon plaintiff’s land, nor that the channel upon defendant’s own land has been out of repair.
The second count complains, that defendant has continued banks which had been wrongfully erected, and thereby has obstructed the plaintiff’s right to drain the water from his land into a channel leading over the land of the defondant. This might serve either for the larger right to drain the waters above Clark’s dam into the channel, or for the smaller right which the new case presents: and it is said for the plaintiff, that this smaller right is shewn by the evidence, and should be now sustained by the Court, although it was not urged on the trial below.
The general rule is, that appeals must depend upon the question or point submitted to the Court below, and that no new *418 ground shall be taken in the Court of Appeals (c). This is, however, a rule for parties and their counsel, not for the Court. It is competent for the Court to do justice by assuming any ground which it perceives to have an important bearing on the merits of the case, taking care only that there shall be full opportunity afforded for explanation and argument (d). When a case has been heard below and decided correctly according to the evidence that was there adduced, this Court will not listen to an application for new trial on the suggestion that a ground, not before taken, may, if another opportunity be afforded, be sustained by evidence, which was not offered before, although it might have been : but, in its discretion, this Court may supply the inadvertent omissions of either Judge or counsel, by. deducing any result which will follow from a just application of the law to the evidence that was before the jury. If we could then see clearly, that the plaintiff’s new case ought to have come to a result different from that which was attained on the trial that involved it, a re-hearing would be awarded.
The objection to the new case most urged by the defendant is, that, (even if the right, to drain through the Smilie canal the few acres of the Middle Place tract which lie below Clark’s dam, was established by the disposition of the owners of the two tenements,) that right has been extinguished by the acquiescence of the owners of Middle Place in the obstructions which were made by George P. Elliott. It is said, that these obstructions were permitted, and were incompatible with the continuance of the easement now claimed; that they amounted to such an alteration in the disposition of the dominant tenement as made it no longer capable of the perception of this easement, and that thus they established a new disposition which did not embrace the easement (e).
Upon this point it must be remarked, that the natural condition of the few acres in question is not made clear by the evidence. They may have been higher than the Smilie Place, so that water *419 from them naturally flowed over the Smilie place, and would naturally flow into the Smilie canal: or they may, (as is represented in Bacot’s plat,) have been in a basin lower than the lands above or below, so that by nature water was ponded on them, and only the surplus after great rains would now run toward the north. The ditches which once went from them to the Smilie canal may or may not have drained them.
The natural easement, if any existed, was once superseded by' the disposition of the owner of the two tenements : the artificial easement which he created, whatever may have been its extent, existed at the time of the sale to George P. Elliott, and is in no respect entitled to less consideration than if it existed by nature. A right to obstruct it, so far as practicable, might have been granted; but substituted, as it was, for the natural right of property, it is entitled to more favorable regard than are those easements, which are restrictions, upon natural rights. It is clear that no mere non tisei', independent of all change of disposition and of all obstruction, would have destroyed it, or could have done so, without substituting something else equally or more inconvenient to the defendant, which must naturallyhave followed from the necessity of .some outlet for the water between Clark’s dam and Smilie. Strong circumstances only could show an intention permanently to abandon it: and it is unnecessary for us to consider, whether such intention should be inferred from any thing short of that length of adverse enjoyment in obstruction of it, which would raise the presumption of a grant of an easement, or of a right to obstruct a natural incident of property. The acts of George P. Elliott, particularly his filling up the ditches between his land and Clark’s dam, rvere in themselves. very strong ; but we cannot venture to say, that there was such evidence of the consent of the persons, under whom the plaintiff claims, to these acts, that from them, unconfirmed by twenty years continuance, the jury must have found that the easement, claimed by the plaintiff in his new case, has been extinguished.
There are, however, other objections to the plaintiff’s new case, *420 which require no deductions from the evidence that the jury have not drawn.
Where a defendant was not the original creator of the disturbance of an easement, an action will not lie against him until he has been requested to remove the cause of the disturbance which is on his land (f); and where obstructions to the plaintiff’s enjoyment of an easement exist upon his own land, and without the removal of these, nothing that the defendant could be lawfully required to do would restore the enjoyment, the plaintiff must remove these obstructions, or show his readiness to do so, before he can require the defendant to do what would be, of itself, insufficient. In this case, the evidence shows that on the eastern edge of the plaintiff’s low ground, below Clark’s dam, the Smilie canal was, before 1832, continued up to Clark’s dam, and that a diagonal ditch ran from a point on the Smilie canal, which point is near to the boundary line between the two tracts, (Middle Place and Smilie,) through this low ground, up to the western end of Clark’s dam. At the junction of this ditch with the canal, a trunk was placed. George P. Elliott went upon the land, now owned by plaintiff, and removed the trunk, and filled up both ditch and canal above the boundary line. To drain in this ditch and canal, according to the condition they were in when the possession of both tenements was in one owner, is the right of the plaintiff, if he has any right to drain through defendant’s land. No obligation is shewn to have devolved upon defendant to remove the obstructions which were upon plaintiff’s land. The plaintiff has, by nothing that he has done, evinced his desire to drain his few acres below Clark’s dam, according to the former scheme of culture: but he caused the defendant’s bank to be cut at a point west of the point where the canal, as it formerly was, would have cut this bank, thus shewing an intention to drain according to some imagined natural right, and not according to the arrangement which had been made for the two tenements : and above all, he cut the bank when the vent through Clark’s dam was open, thus evincing an intention to drain, not *421 his few acres below the dam only, but the whole of his Middle Place. He thus added to an easement which he may have been entitled to, a larger easement which the decision made on the Circuit and herein before approved by us, shews he had no right to. In many cases, the right to an easement is lost by encroachment (g). Without, however, deciding any thing on that head, we can see that the obstructions continued by the defendant were necessary to guard him against the larger right which the plaintiff had undertaken to establish, and that the plaintiff' has no right to complain of these obstructions as disturbances of a rightful easement, unless he can shew that the usurped easement could have been obstructed without disturbance of the rightful one. He so blended the two in his attempt to enjoy them, that the defendant could not separate, and might lawfully obstruct both, at any rate until the excess over the right was corrected (h). It thus appears that, if the plaintiff had, on Circuit, admitted what we find to have been correctly decided, that he had no right to drain through Clark’s dam, and had there presented only the new case which he has here submitted, he ought, under the evidence which was adduced, to have been nonsuited.
The motion is therefore dismissed.
O’Neall, Evans, Frost and Whitner, JJ. concurred.

(a) Gale & What, on Easem. 49.

(b) Imtirel’s case, 4 Rep. 86,

(c) Ford vs. Travis, 2 Brev. 299,

(d) Mitchell vs. Anderson, 1 Hill, 70.

(e) Liggins vs. Inge, 7 Bing. 682; Gale & W. on Easem. 354.

(f) Pennuddock’s case, 5 Rep. 101; Brent vs. Haddon, Cro. Jac. 555.

(g) Garritt vs. Sharp, 3 Ad. & E. 325 ; 4 Nev. & M. 834.

(h) Gale & W. on Easem. 374.